[Cite as *State v. Balidbid*, 2012-Ohio-1406.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :           C.A. CASE NO.    24511

v.                                               :           T.C. NO.    10 CR 3244

BILLY BALIDBID                                   :              (Criminal appeal from
                                                                Common Pleas Court)

    Defendant-Appellant                      :

                                                 :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____30th____ day of ____March____, 2012.

· · · · · · · · · ·

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

WILLIAM A. SHIRA, III, Atty. Reg. No. 0005472, 432 Silvercrest Terrace, Dayton, Ohio 45440
    Attorney for Defendant-Appellant

and

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P. O. Box 341021, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

**{¶ 1}** Billy Balidbid pled guilty to rape by force or threat of force, in violation of R.C. 2907.02(A)(2), and kidnapping, in violation of R.C. 2905.01(A)(4), both first degree felonies. In exchange for the plea, the State agreed not to pursue charges for three additional rapes involving other victims. At sentencing, the trial court concluded that the rape and kidnapping charges were not allied offenses of similar import, and it imposed ten years in prison for the rape and eight years for the kidnapping, to be served consecutively. Balidbid was also sentenced to a mandatory five years of post-release control and informed that he was classified as a Tier III sex offender.

**{¶ 2}** Balidbid appealed from his convictions. He claimed that his plea was not knowing, intelligent, and voluntary, because he was improperly informed that he was eligible for community control. Balidbid died on November 3, 2011, while in the custody of the Ohio Department of Rehabilitation and Correction. We have granted the State's motion to substitute Balidbid's appellate counsel, William A. Shira, III, as Balidbid's representative in this appeal. App.R. 29.

**{¶ 3}** For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded to the trial court.

**{¶ 4}** In determining whether to accept a defendant's guilty plea, the trial court must determine whether the defendant knowingly, intelligently, and voluntarily entered the plea. *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), at syllabus. "If a defendant's guilty plea is not knowing and voluntary, it has been obtained in violation of due

process and is void." *State v. Brown*, 2d Dist. Montgomery Nos. 24520 & 24705, 2012-Ohio-199, ¶ 13, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim. R. 11(C). *Brown* at ¶ 13.

{¶ 5} Crim.R. 11(C)(2) requires the court to (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty [or no contest] and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3. *See also State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 27.

{¶ 6} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *Clark* at ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g.*, *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In

contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 7} Furthermore, when nonconstitutional rights are at issue, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15. Where the trial court completely fails to comply with Crim.R. 11(C)(2)(a) or (b), however, "an analysis of prejudice" is not implicated. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

{¶ 8} Balidbid and the State agree that Balidbid's rape conviction carried a mandatory prison sentence under R.C. 2929.13(F)(2) and that he was ineligible for community control. At the time of Balidbid's plea, however, counsel for both the State and Balidbid, as well as the trial court, apparently believed that Balidbid was eligible for community control and was not subject to a mandatory prison sentence. The trial court told Balidbid at the plea hearing:

> THE COURT: Okay. Now, each of those [charges] is a felony of the first degree. As such, they carry maximum potential penalties of a $20,000 fine on each and three, four, five, six, seven, eight, nine, or 10 years in prison on each for a total of 20 years. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now – is there a technical eligibility for community control in this case?

[THE PROSECUTOR:] There is.

THE COURT: Okay. Now, technically you're eligible for community control sanctions or probation. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you were to get that, that could last for as long as five years and could involve six months in jail. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. And nobody's promised you that if you plead today, that you would get community control, have they?

THE DEFENDANT: Yes.

THE COURT: Did anybody promise you that if you plead today, you'll get probation?

THE DEFENDANT: (Shaking head.)

THE COURT: Okay. You got to say it out loud, sir.

THE DEFENDANT: No, sir.

{¶ 9} After entering pleas of guilty to rape and kidnapping, Balidbid signed a Waiver and Plea form, in open court, which also indicated that he was eligible to be sentenced to community control. At the conclusion of the plea hearing, the trial court asked defense counsel and the prosecutor if "either of you know about – there's no felony one or two convictions that – for this – that would make it a mandatory prison time." Both defense counsel and the prosecutor responded, "No, Your Honor."

{¶ 10} When a defendant on whom a mandatory prison sentence must be imposed

enters a plea of guilty or no contest, the court must, before accepting the plea, determine the defendant's understanding that the defendant is subject to a mandatory sentence and that the mandatory sentence renders the defendant ineligible for probation or community control sanctions. Crim.R. 11(C)(2)(a); *e.g*., *State v. Byrd*, 178 Ohio App.3d 646, 2008-Ohio-5515, 899 N.E.2d 1033 (2d Dist.); *State v. Miller*, 2d Dist. Clark No. 08 CA 90, 2010-Ohio-4760, ¶ 12; *State v. Howard*, 2d Dist. Champaign No. 06-CA-29, 2008-Ohio-419.

{¶ 11}    Here, the trial court not only failed to inform Balidbid that he was subject to a mandatory prison term, it expressly told him that he was eligible for community control. This was reenforced by defense counsel and the prosecutor at the conclusion of the hearing, both of whom told the court that Balidbid was not subject to a mandatory sentence, and by the plea form, which was not corrected by counsel or the trial court. The plea colloquy not only failed to substantially comply with Crim.R. 11(C)(2)(a), but it provided misleading information as to the availability of community control as a viable sanction and to the nature of any prison sentence that might be imposed.

{¶ 12}    Moreover, even if Balidbid believed that community control was unlikely, such an understanding would not constitute substantial compliance, given the mandatory nature of his sentence. In *State v. Howard*, 2d Dist. Champaign No. 06-CA-29, 2008-Ohio-419, we reversed the defendant's conviction and remanded for further proceedings when Howard was informed that he eligible for, but would likely not receive, community control. We reasoned:

> The effect of Howard's plea was that he would be subject to a
> mandatory prison term that would render him ineligible for the imposition of

community control sanctions. He could not have appreciated this effect of his plea, because he was misadvised by the trial court that he would be eligible for the imposition of community control sanctions. Ineligibility for (as opposed to the unlikelihood of) the imposition of community control sanctions is deemed to be a sufficiently important effect of a plea of guilty or no contest that it is specifically incorporated in Crim. R. 11(C)(2)(a) as a subject that must be specifically addressed by the trial court, concerning which the defendant's understanding must be specifically determined by the trial court.

We conclude that the trial court's having advised Howard that the imposition of community control sanctions was unlikely in his case did not satisfy the requirement, under the Rule, that the trial court determine that Howard understood that he was not eligible for the imposition of community control sanctions, especially where the trial court affirmatively mis-advised Howard that he was eligible for the imposition of community control sanctions. *Howard* at ¶ 25-26.

{¶ 13} The State argues that Balidbid nevertheless has failed to establish that he was prejudiced by the trial court's plea colloquy regarding community control. The State emphasizes that the court told Balidbid that he was "technically" eligible for community control and that Balidbid acknowledged that he had not been promised community control in exchange for his plea. The State further notes that Balidbid told the presentence investigator that he would live with his mother after his release from prison, and defense

counsel's sentencing memorandum did not advocate for community control. The State summarizes its argument as follows: "Balidbid never had any expectation of returning to the community. He knew he was going to prison. That is evident from his statements at the plea hearing, his failure to ask questions at the hearing, his statements during the pre-sentence investigation, and the statements of his counsel in the sentencing memorandum and at sentencing."

{¶ 14} Even assuming an analysis of prejudice were required in this case, we cannot accept the State's representation of Balidbad's expectations. Balidbid did not make any statements at the plea hearing that expressed an understanding that he would be going to prison. His acknowledgment that he had not been promised community control in exchange for his plea was simply a statement that he was not promised community control; it was not an admission that he understood that he would be going to prison and that community control would not be imposed. And, although Balidbid told the presentence investigator that he would live with his mother "once he is released from prison," there is nothing to support the conclusion that, at the time of his plea, he understood that the court would be imposing a prison sentence. The trial court did not overstate the penalty that Balidbid could have received; to the contrary, it misrepresented that he was eligible to receive a more lenient sanction when he was not.

{¶ 15} It may be that everyone in the courtroom "knew" that Balidbad was going to be sentenced to prison. One of the reasons behind the mandatory language of Crim.R. 11(C)(2)(a) appears to be to avoid a retrospective analysis of "what did he know and when did he know it." For the foregoing reasons, Balidbid's assignment of error is sustained.

{¶ 16}   The trial court's judgment will be reversed, and the matter will be remanded to the trial court.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Kirsten A. Brandt
William A. Shira, III
Robert Alan Brenner
Hon. Gregory F. Singer