[Cite as *State v. Hendrix*, 2013-Ohio-4978.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2012-12-265 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 11/12/2013 |
| - vs - | | |
| | : | |
| GERALD HENDRIX, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2012-04-0606


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Gerald Hendrix, appeals his conviction in the Butler County Court of Common Pleas for trafficking in cocaine following his guilty plea.

{¶ 2} Appellant was indicted in July 2012 on one count of trafficking in cocaine with two forfeiture specifications, one count of cocaine possession with two forfeiture specifications, three counts of drug possession, one count of receiving stolen property, and one count of driving under suspension. On September 18, 2012, appellant entered a guilty

plea to one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) (a second-degree felony) and to two forfeiture specifications. Following a Crim.R. 11(C) colloquy, the trial court accepted appellant's guilty plea. The trial court subsequently sentenced appellant to a mandatory prison term of five years and ordered the forfeiture of a 2005 Cadillac and $573.

{¶ 3} Appellant appeals, raising one assignment of error:

{¶ 4} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS ACCEPTANCE OF A GUILTY PLEA WHICH WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY, IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 5} Appellant argues the trial court completely failed to comply with Crim.R. 11(C)(2)(a), and thus his guilty plea was not knowingly, intelligently, and voluntarily made, because during the Crim.R. 11 colloquy, the trial court told appellant he might be eligible for earned credit and indirectly told him he could be eligible for judicial release, when, in fact, he was subject to a mandatory prison term. Appellant asserts that the trial court's "significant misinformation" during the colloquy improperly suggested the length of his prison term could be reduced when, in fact, he was required to serve his sentence in its entirety.

{¶ 6} Crim.R. 11(C)(2)(a) provides that in felony cases:

> The trial court shall not accept a plea of guilty * * * without first addressing the defendant personally and * * * [d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

Crim.R. 11(C)(2)(a) thus requires a trial court to ascertain that a defendant understands "the maximum penalty involved" when he enters a guilty plea. *See State v. Harrington*, 2d Dist. Greene No. 06-CA-29, 2007-Ohio-1335. In addition, when a defendant who is subject to a

mandatory prison sentence enters a guilty plea, Crim.R. 11(C)(2)(a) requires the trial court, before accepting the plea, to determine that the defendant understands that the mandatory sentence renders him ineligible for community control. *See State v. Byrd*, 178 Ohio App.3d 646, 2008-Ohio-5515 (2d Dist.); *State v. McCuen*, 5th Dist. Muskingum No. CT2004-0038, 2005-Ohio-3346 (under Crim.R. 11(C)(2)(a), the trial court must inform a defendant if the defendant is not eligible for community control).

{¶ 7} Appellant and the state agree that appellant's conviction for trafficking in cocaine carried a mandatory prison sentence under R.C. 2929.13(F)(5) and that he was not eligible for judicial release or earned credit. The state concedes that "the trial court's ambiguous suggestion that Appellant was potentially eligible for judicial release was stated in error." Under Crim.R. 11(C)(2)(a), appellant was also ineligible for community control.

{¶ 8} A criminal defendant's choice to enter a guilty plea is a serious decision because, "by agreeing to plead guilty, the defendant loses several constitutional rights." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25. When a defendant enters a guilty plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily, and failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996); *State v. Phillips*, 12th Dist. Butler No. CA2008-05-126, 2009-Ohio-1448, ¶ 10.

{¶ 9} Before a trial court can accept a guilty plea in a felony case, it must engage the defendant in a colloquy to determine that he understands the plea he is entering and the rights he is voluntarily waiving. Crim.R. 11(C)(2); *Clark* at ¶ 26.

{¶ 10} Minimally, a trial court must substantially comply with Crim.R. 11 when it gives the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 14. Under the substantial-compliance standard, we review the totality of the circumstances surrounding the defendant's plea and determine

whether he subjectively understood the implications of his plea and the rights he is waiving. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 20, citing *State v. Nero*, 56 Ohio St.3d 106 (1990).

{¶ 11} When the trial court does not substantially comply with Crim.R. 11(C)(2)(a) or (b) with regard to a nonconstitutional right, reviewing courts must determine whether the trial court partially complied or completely failed to comply with the rule. *Clark*, 2008-Ohio-3748 at ¶ 32. If the trial court partially complied, the plea may be vacated only if the defendant demonstrates prejudicial effect. *Id.* If the trial judge completely failed to comply with the rule, the plea must be vacated. *Id.* "A complete failure to comply with the rule does not implicate an analysis of prejudice." *Sarkozy* at ¶ 22.

{¶ 12} In the case at bar, before it accepted appellant's guilty plea on September 18, 2012, the trial court engaged appellant in a Crim.R. 11 colloquy and reviewed the written plea agreement with him:

> [The Plea of Guilty and Jury Waiver] reflects that you intend to withdraw your former plea of not guilty and enter pleas of guilty to a single charge together with the two specifications. * * * The charge specifically is trafficking [in] cocaine, a second degree felony violation of Ohio Revised Code § 2925.03(A)(2). Being a second degree felony, it carries a maximum stated prison term of up to eight years, a maximum fine of up to $15,000. It has a mandatory fine of $7,500. *There is a prison term that's mandatory and there is a prison term that's presumed necessary, and there is a license suspension* that ranges anywhere from six months to five years. Do you understand that, sir?

(Emphasis added.)

{¶ 13} Appellant replied he did. Subsequently, the trial court discussed the two specifications and the state's agreement to merge the remaining six counts in exchange for appellant's guilty plea. The trial court continued:

> You also understand, Mr. Hendrix, that upon acceptance of your plea here today, the Court could proceed to enter a judgment against you and I could actually go ahead and sentence you here

today? I could give you the sentence of up to eight years in the penitentiary, I could also give you a fine of up to $15,000, and at a bare minimum, I'd have to give you a fine of $7,500, the license suspension. And together with that, I could also impose additional financial sanctions upon you[.] Do you understand that, sir?

Appellant replied he did.

{¶ 14} The trial court further advised appellant that "if the Court imposes a prison sanction upon you in connection with this matter, that - - and the presumption is that I will, that *you would be able to earn credit against that sentence* but it would have to be earned in the manner specified by statute by your own good behavior; it would not be automatic? You understand that, sir?" (Emphasis added.) Appellant replied he did.

{¶ 15} Thereafter, after advising appellant about the three-year mandatory postrelease control he would be subject to and the consequences for violating postrelease control conditions, the trial court advised appellant:

> All right, Mr. Hendrix, *the Court's already informed you that there is a presumption of a prison term here. There is a mandatory period of prison. However, somewhere during that time, depending on what kind of sentence you got, the Court could impose a community control sanction upon you under certain circumstances.* In that situation, the - - if the Court decided to exercise its jurisdiction, and to do that, *you understand that the Court could place you on community control for a period of up to five years* and that if you violated the turns [sic] and conditions of community control, the Court could extend that maximum time out to a maximum of five years, could impose a more restrictive sanction upon you, such as sending you to the county jail or a community-based correctional facility or ultimately just send you on to prison for the period of time the Court's already alluded to, which is up to eight years. Do you understand that, sir?

(Emphasis added.) Appellant replied he did. The trial court continued:

> *You also understand, Mr. Hendrix, that if you're placed on community control, you will be required to pay a monthly probation fee*, which at the current time is $25 per month, and that *failure to pay that fee may in and of itself result in revocation of community control?*

- 5 -

(Emphasis added.)

{¶ 16} The record indicates that appellant signed a written plea before the Crim.R. 11 colloquy. The written plea, which is on a standard form, indicated that the maximum prison term for trafficking in cocaine was eight years. The form also called for a yes or no answer to the following: "Prison Term Is Mandatory," and "Prison Term Is Presumed Necessary;" the handwritten answer was yes to both.

{¶ 17} The written plea also provided that appellant "may be eligible to earn days of credit against any prison term that I receive as a result of this plea. However, that earned credit is not automatic; it must be earned in the manner specified by statute." Likewise, the judgment of conviction entry provided that "because the Court's sentence includes a period of incarceration," appellant "may be eligible, but is not automatically eligible or entitled, to earn days of credit through productive participation in a qualifying program[.]"

{¶ 18} Finally, with regard to community control, the written plea provided that "if this Court is not required by law to impose a prison sanction, it may impose community control sanctions or non-prison sanctions upon me." The provision subsequently notified appellant of the consequences of violating community control sanctions, the fact he would be required to pay a monthly probation fee, and the consequences of failing to pay that fee. The provision mirrored what the trial court told appellant during the colloquy with regard to community control.

{¶ 19} In *Phillips*, 2009-Ohio-1448, Phillips appealed his conviction on the ground his no contest plea was not knowingly made because during the Crim.R. 11 colloquy, the trial court misinformed him it could sentence him to prison or community control sanctions, when, in fact, he was subject to a mandatory prison term. The trial court did not mention mandatory or consecutive prison terms. We found that "under the totality of the circumstances, [Phillips] could not have subjectively understood that he was ineligible to serve a community control

sanction instead of a prison term." *Id.* at ¶ 19. We vacated the plea on the ground the "trial court affirmatively misinformed [Phillips] and completely failed to comply with the rule." *Id.*

{¶ 20} One of the cases relied on in *Phillips* was a decision from the Second Appellate District, *State v. Howard*, 2d Dist. Champaign No. 06-CA-29, 2008-Ohio-419. Like Phillips, Howard was not eligible for community control. During the Crim.R. 11 colloquy, the trial court did not advise Howard he was not eligible for community control; to the contrary, the court advised him he was eligible, but that the imposition of community control sanctions was unlikely. Howard appealed his conviction on the ground the trial court violated Crim.R. 11(C)(2)(a) when it accepted his guilty plea. The Second Appellate District held that:

> The trial court's having advised Howard that the imposition of community control sanctions was unlikely * * * did not satisfy the requirement, under the Rule, that the trial court determine that Howard understood that he was not eligible for the imposition of community control sanctions, especially where the trial court affirmatively mis-advised Howard that he was eligible for the imposition of community control sanctions.

*Id.* at ¶ 26. The appellate court found that:

> The effect of Howard's plea was that he would be subject to a mandatory prison term that would render him ineligible for the imposition of community control sanctions. He could not have appreciated this effect of his plea, because he was misadvised by the trial court that he would be eligible for the imposition of community control sanctions. Ineligibility for (as opposed to the unlikelihood of) the imposition of community control sanctions is deemed to be a sufficiently important effect of a plea of guilty or no contest that it is specifically incorporated in Crim. R. 11(C)(2)(a) as a subject that must be specifically addressed by the trial court, concerning which the defendant's understanding must be specifically determined by the trial court.

*Id.* at ¶ 25. The appellate court reversed the trial court's judgment. The appellate court did not determine whether Howard was prejudiced by the trial court's incorrect advisement.

{¶ 21} In *State v. Silvers*, 181 Ohio App.3d 26, 2009-Ohio-687 (2d Dist.), Silvers was not eligible for community control because he was facing a mandatory prison term under R.C.

2929.13(F). He was likewise not eligible for judicial release during his prison term. During the Crim.R. 11 colloquy, the trial court correctly advised Silvers that he would be sentenced to a mandatory prison term and that he was not eligible for community control. Silvers' plea form, however, incorrectly stated that he did not face a mandatory prison term and that he was eligible for community control upon the granting of judicial release. Silvers appealed his conviction on the ground that under the totality of the circumstances, the trial court did not substantially comply with Crim.R. 11(C)(2)(a).

{¶ 22} The Second Appellate District found that given the conflicting information between the colloquy and the plea form, and the trial court's failure to amend the "incorrect and misleading" information in the plea form with regard to community control, "Silvers was unable to subjectively understand the implication of his plea and the rights he was waiving," and thus, "the trial court failed to substantially comply with Crim.R. 11(C)(2)(a)." *Id.* at ¶ 13.

{¶ 23} With regard to judicial release, the appellate court noted that because "a defendant's ineligibility for judicial release is not one of the matters regarding which Crim.R. 11(C)(2)(a) requires the court to determine a defendant's understanding," "absent some misstatement or misrepresentation that causes the determination to be applicable, * * * the trial court is not required to inform defendant that he is ineligible for judicial release." *Id.* at ¶ 14. The appellate court found that "the trial court failed to substantially comply with Crim.R. 11(C)(2)(a) when it did not amend the incorrect information in the * * * plea form by affirmatively notifying Silvers during the plea colloquy that he was ineligible for judicial release." *Id.* at ¶ 15. As a result, Silvers' guilty pleas were not knowingly, intelligently, or voluntarily made. *Id.* The appellate court did not determine whether Silvers was prejudiced by the trial court's failure to amend the incorrect information.

{¶ 24} In *State v. Ealom*, 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, Ealom was told during the Crim.R. 11 colloquy that he was not eligible for community control or judicial

release because of his mandatory sentence. However, he was also told that "during that period of mandatory sentencing, [he was] not eligible for judicial release for at least three-year period of time plus six months." The Eighth Appellate District held that Ealom's guilty plea was not knowingly, intelligently, and voluntarily made because the trial court "led Ealom to believe that he would be eligible for judicial release in three-and-a-half years, [regardless of what his sentence was], when, in fact, he will not be eligible at all for judicial release." *Id.* at ¶ 5, 27. The appellate court found that with regard to Ealom's right to judicial release, "we are not convinced that Ealom 'appreciated the effect of his plea and his waiver of rights in spite of the trial court's error.'" *Id.* at ¶ 10, quoting *State v. Caplinger*, 105 Ohio App.3d 567, 572 (4th Dist.1995). The appellate court did not determine whether Ealom was prejudiced by the trial court's incorrect advisement.

{¶ 25} In the case at bar, we find that under the totality of the circumstances, appellant could not have subjectively understood the implication of his plea and the rights he was waiving. Specifically, given the fact the trial court gave misleading and contradictory information, appellant could not have understood he was ineligible for community control, earned credit, or judicial release, and thus, that he was ineligible to serve a shorter sentence than the one ultimately imposed by the trial court.

{¶ 26} Appellant was subject to a mandatory prison term, and as a result, was ineligible for community control, judicial release, or earned credit. Yet, during the Crim.R. 11 colloquy, the trial court affirmatively misinformed appellant and told him that (1) somewhere during the mandatory period of prison, the court could (a) impose community control, in direct contravention of Crim.R. 11(C)(2)(a), and (b) thereby implicitly telling appellant he might be eligible for judicial release; and (2) appellant could also be eligible for earned credit. Appellant's written plea (and the judgment entry of conviction) likewise provided misleading and incorrect information with regard to appellant's eligibility for earned credit. R.C.

2929.13(F). The written plea likewise provided ambiguous information regarding the application of community control. In addition, and in view of the incorrect and misleading information provided to appellant, the trial court did not explain that a mandatory sentence meant appellant would serve every single day of his five years in prison. Thus, during the Crim.R. 11 colloquy, the trial court understated the sentence that appellant could receive, and then, imposed an actual sentence greater than the understated penalty. It is not clear whether appellant understood he was required to serve the entire prison term or whether only the imposition of a prison term was mandatory. However, he was clearly advised he could serve a shorter sentence, due to earned credit, community control, and judicial release, than the one ultimately imposed by the trial court.

{¶ 27} "The underlying purpose * * * of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981). "To make a voluntary choice, the defendant must act with a full understanding of the consequences of his plea." *State v. Farley*, 1st Dist. Hamilton No. C-0100478, 2002 WL 397909, *2 (Mar. 15, 2002). When conducting a Crim.R. 11 colloquy, "the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea." *Clark*, 2008-Ohio-3748 at ¶ 26. *See also State v. Dawson*, 8th Dist. Cuyahoga No. 61828, 1993 WL 12286 (Jan. 21, 1993) (trial court must inform the defendant if he would be required to serve actual time in prison and must disclose the length of the mandatory actual incarceration). Because the prospect of community control (or judicial release or earned credit) would be a factor weighing heavily in favor of a plea, the fact that such is statutorily precluded can affect a defendant's decision to enter a guilty plea. *See Farley* at *id.*

{¶ 28} In the case at bar, the trial court was not required to discuss judicial release or

earned credit during the Crim.R. 11 colloquy but was required to advise appellant he was ineligible for community control sanctions. When the trial court "expanded on the information set forth in the rule, the [court] obscured the relatively straightforward maximum penalties" for appellant's offenses. *Clark* at ¶ 38.

{¶ 29} As the Ohio Supreme Court stated:

> If a trial judge chooses to offer an expanded explanation of the law in a Crim.R. 11 plea colloquy, the information conveyed must be accurate. The rule is in place to ensure that defendants wishing to plead guilty or no contest do so knowingly, intelligently, and voluntarily. Because of the substantial misinformation that the trial judge provided to the defendant in this case, the defendant could not have entered his plea knowingly, intelligently, and voluntarily. The fact that the trial court provided some correct information as well does not alter this conclusion, because the correction information was not provided in such a manner as to remedy the erroneous information.

*Clark*, 2008-Ohio-3748 at ¶ 39.

{¶ 30} The state cites several appellate decisions in support of its argument that while the trial court did not substantially comply with Crim.R. 11(C), there is no evidence that appellant would not have otherwise pled guilty had the trial court properly advised him. *See State v. Eberle*, 12th Dist. Clermont No. CA2009-10-065, 2010-Ohio-3563; *State v. Moore*, 12th Dist. Clinton No. CA2010-02-003, 2010-Ohio-6082; *State v. Douglass*, 12th Dist. Butler Nos. CA2008-07-168 and CA2008-08-199, 2009-Ohio-3826; and *State v. Wallace*, 5th Dist. Licking No. 2010-CA-00008, 2010-Ohio-4297.

{¶ 31} We find those cases are inapplicable. In all of those cases, the defendants entered a guilty plea after the trial court improperly advised them about an additional restriction that did not apply. As a result, the defendants' correct sentences were less restrictive than the sentences of which they were advised at the time of their plea. In finding that the defendants were not prejudiced by the trial court's incorrect advisement, the

appellate courts reasoned that if the defendants were willing to plead guilty believing they were subject to a more severe sentence, then they could not claim they would not have pled guilty had they known they were subject to a less severe sentence.

{¶ 32} The opposite is true here. Appellant was incorrectly advised he could serve a shorter sentence than the one ultimately imposed by the trial court, due to earned credit and judicial release, even though he was ineligible for either. *See State v. Balidbid*, 2d Dist. Montgomery No. 24511, 2012-Ohio-1406 (trial court did not overstate the penalty that defendant could have received; to the contrary, the court misrepresented that defendant was eligible to receive a more lenient sanction when he was not).

{¶ 33} In light of all of the foregoing, we find that the trial court failed to comply with Crim.R. 11(C)(2)(a), appellant's guilty plea was not knowingly, intelligently, and voluntarily made, and under the circumstances of this case, appellant need not demonstrate prejudice. *See Ealom*, 2009-Ohio-1365; *Silvers*, 2009-Ohio-687; and *Howard*, 2008-Ohio-419. Appellant's assignment of error is accordingly well-taken and sustained.

{¶ 34} Appellant's plea is vacated and this matter is reversed and remanded to the trial court for further proceedings consistent with the law and in accordance with this Opinion.

RINGLAND, P.J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 35} I concur in judgment, though I do so hesitantly and only because I am constrained by precedent. While I agree with the majority that prior case law establishes that the trial court did not substantially or partially comply with the duties set forth in Crim.R. 11(C), I do not believe that Hendrix was actually prejudiced by any confusion possibly

created by the trial court's misstatements under the narrow set of facts presented.

{¶ 36} While I agree with the majority that a defendant's choice to plead guilty is a "serious decision," I maintain that Hendrix's decision to plead guilty was made with knowledge that he would be serving a mandatory prison sentence. The written plea of guilt very specifically lists that the maximum stated prison term is eight years, and that a prison term is mandatory for the charge. In a separate section, the plea form again informed Hendrix that there was a mandatory prison term associated with the charge against him.

{¶ 37} I also agree with the majority that during the plea colloquy, the trial court mistakenly discussed the possibility of community control and release. Even so, and despite comparable case law, I have serious doubt that the trial court's subsequent inferences regarding community control or early release somehow vitiated the initial voluntary nature of Hendrix's plea.

{¶ 38} Before the trial court began its colloquy, it specifically noted that Hendrix had already executed the plea agreement form. The court then confirmed with Hendrix that he could read and write, and verified that Hendrix had signed and understood the written plea agreement. The trial court then reiterated, "there is a prison term that's mandatory and there is a prison term that's presumed necessary, and there is a license suspension that ranges anywhere from six months to five years." Hendrix confirmed that he understood the information on the plea form, and thereby understood that his prison sentence would be mandatory.

{¶ 39} The trial court then addressed that in exchange for Hendrix's guilty plea, the remaining six counts against him were merged, essentially dismissing those charges. At that time, the trial court then stated, "very well. All right, Mr. Hendrix, so you - - and is that your complete understanding as to the plea arrangement between you and the State of Ohio with respect to this matter?" Hendrix confirmed that it was, and the trial court continued with the

colloquy.

{¶ 40} Although the trial court inferred that Hendrix could possibly earn credit against his sentence, the trial court expressly stated that it would be done according to statute and "would not be automatic." Therefore, and although an erroneous inference, Hendrix cannot claim that he was somehow guaranteed the right to earn credit against his sentence, as that was never an option. The fact that the trial court stated that credit would not be automatic demonstrates that Hendrix continued with this plea patently aware that he may not receive such credit.

{¶ 41} I agree with the majority that the trial court's later reference to a community control sanction was confusing. Even so, the trial court first explained that Hendrix was facing a "mandatory period of prison" and that the community control was based upon the "kind of sentence you got," and that "the court could impose a community control sanction upon you under certain circumstances." Again, the trial court's wording, while a misstatement of the law, did not vest to Hendrix any right to community control.

{¶ 42} Later during the colloquy, the trial court affirmed with Hendrix that he had a "full and fair opportunity to discuss" with his attorney the nature of the charges and the consequences of pleading guilty. Hendrix then confirmed again that he had read and reviewed the plea form, and that he was satisfied with the representation offered by his counsel. The trial court then asked Hendrix if he had any questions, and Hendrix said "no." After the trial court went through each of the constitutional issues, the trial court asked Hendrix if he was "satisfied that you're doing all of this knowingly, intelligently and voluntarily?" Hendrix responded that he was, and proceeded to plead guilty.

{¶ 43} Had the trial court's misstatements created confusion to the degree of rendering Hendrix's plea involuntary, one would think that either Hendrix or his defense counsel would have expressed any misunderstanding Hendrix may have felt or, at the least, asked the trial

- 14 -

court to clarify what the sentence could or would be.

{¶ 44} As stated by the majority opinion, the purpose of the Crim.R. 11(C) colloquy is to ensure that the defendant understands the plea he is entering and the rights he is voluntarily waiving. The trial court has a duty to advise the defendant of both the waiver of constitutional rights, as well as non-constitutional issues, such as informing the defendant when he is not eligible for probation or the imposition of community control sanctions.

{¶ 45} I agree with the majority that the trial court did not substantially comply with Crim.R. 11. The Ohio Supreme Court has suggested that prejudice is presumed when a trial court completely fails to comply with Crim.R. 11(C). *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 32. Here, the trial court failed to tell Hendrix that he was not eligible for community control as is required by Crim.R. 11(C). Compounding the issue, the trial court inferred that community control was actually available, and also inferred that Hendrix could earn credit. Following the precedent set forth in *Clark*, therefore, I am constrained to presume that Hendrix was prejudiced.

{¶ 46} However, if I were not so constrained to assume as much, I do not believe that Hendrix is able to demonstrate that he was prejudiced. Hendrix understood his plea because he agreed to plead guilty to the charge before *and* after the trial court made its misstatements, and there is no indication in the record that Hendrix somehow relied upon the possibility of either community control or credit when making his decision.

{¶ 47} This is especially true where Hendrix, who had an extensive criminal record, was facing seven charges, six of which were merged as a result of the guilty plea. Those charges will now be revived once his plea is vacated, and Hendrix will face all seven charges upon remand. This court is completely unable to predict what Hendrix will do once he faces the full charges once more. Even so, such contemplation cannot be taken into consideration when determining whether the trial court complied with Crim.R. 11. Based on precedent, I

agree with the majority that Hendrix's plea must be vacated and the issue remanded. Therefore, and as hesitant as my agreement is, I concur in judgment.