[Cite as *State v. Foster*, 2018-Ohio-4006.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :        APPEAL NO. C-170245
                                           TRIAL NO. B-1601333
    Plaintiff-Appellee,      :

 vs.                              :
                                           *O P I N I O N.*
DORIAN FOSTER,                    :

    Defendant-Appellant.     :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 3, 2018


*Paula E. Adams*, Assistant Hamilton County Prosecuting Attorney, for Plaintiff-Appellee,

*Hastings & Hastings, LLC,* and *Robert R. Hastings, Jr.,* for Defendant-Appellant.

**DETERS, Judge.**

{¶1}   Defendant-appellant Dorian Foster was indicted for the rape and gross sexual imposition of his stepdaughter.   Foster and the state entered into a plea agreement.   Foster pleaded guilty to rape.   In exchange, the state dismissed the gross-sexual-imposition charge.   The trial court sentenced Foster to seven years in prison and informed him of his duty to register as a Tier III sex offender.   Foster filed a motion for a delayed appeal, which this court granted.

{¶2}   In two assignments of error, Foster argues that his guilty plea was not knowingly, intelligently, and voluntarily made because he was not informed that the rape offense carried a mandatory prison term, and that the Ohio Department of Rehabilitation and Correction violated the separation-of-powers doctrine by signifying in its records that his sentence is "mandatory."   Finding merit in neither assignment of error, we affirm the judgment of the trial court.

### Plea Hearing

{¶3}   The record reflects that the trial court asked Foster if he had reviewed with defense counsel the entry withdrawing his plea of not guilty and entering a guilty plea to rape, and if he had voluntarily signed the form.   Foster replied that he had. The trial court then reviewed the form with Foster, questioning him specifically about his understanding of its contents.   Foster acknowledged that he was pleading guilty to rape, which was punishable as a first-degree felony that carried a minimum sentence of three years in prison and a maximum sentence of 11 years in prison.  The trial court told Foster that the rape offense did not carry a mandatory prison term, but that it did carry a maximum fine of $20,000. The trial court then informed Foster that by pleading guilty to the rape offense he was subject to classification as a Tier III sex offender.

{¶4} Thereafter the trial court stated, "You understand this is not a probation offense, that I'm not considering probation on this case. Do we understand each other?" Foster replied, "Yes." The court went on to state, "And I'm thinking about a penitentiary sentence of anywhere from 3 to 11 years. Do you understand that?" Foster replied, "Yes." Despite this exchange, the trial court read the portion of the plea form stating that "at any point in this sentence, I can give you community control. If you violate any of those conditions, I can give you a longer period of community control probation. I can increase the restrictions on the community control probation. Or sentence you anywhere from 3 to 11 years and community control may last up to five years."

{¶5} The trial court then stated, "I want to say this because I don't want you to walk out of this room thinking or having any miscalculations or being misguided. I'm not thinking about probation. * * * Once I lay down a number, that's going to be it. Do we understand each other?"

{¶6} Foster inquired, "What is she saying?"

{¶7} The trial court then stated, "I'll repeat that. I'm not considering probation at this particular time for you because of the nature of the charge. * * * Do we understand each other, sir?" Foster replied, "Yes. Yes ma'am."

{¶8} The trial court told Foster that he had not been very responsive during the plea colloquy, and it was going to give him some time to consider whether he still wanted to plead guilty to the rape offense. The trial court informed Foster that he was entering into a blind plea because he did not know what sentence the court would impose. The trial court told Foster it could impose a prison sentence of anywhere from three to 11 years, and that if he decided to plead guilty it would order a presentence investigation and a court clinic report, and it would listen to both the

victim's and the defendant's families before selecting the proper term. The trial court told Foster that it was not thinking about probation or even imposing a minimum prison term and that it would not know how many years it was going to impose until it had seen the presentence investigation and a court clinic evaluation. The trial court then took a short recess.

{¶9} Following the recess, the trial court asked Foster if he still wished to plead guilty. Foster told the trial court that, after speaking with his mother, he had decided to proceed with the plea agreement. The trial court then resumed its plea colloquy with Foster. In response to further questioning by the trial court, Foster stated that he was satisfied with defense counsel, he was not under the influence of drugs or alcohol, and he had voluntarily signed the guilty-plea form.

{¶10} The trial court informed Foster that by pleading guilty he was waiving certain constitutional rights, including his privilege against self-incrimination, the right to a jury trial, the right to confront his accusers, and the right to require the state to prove his guilt beyond a reasonable doubt. Foster acknowledged his waiver of these constitutional rights, and that his guilty plea was a complete admission to the charge. The assistant prosecuting attorney then read the facts as set forth in the indictment. Thereafter, the trial court accepted Foster's plea and found him guilty of rape.

### Sentencing Hearing

{¶11} At the sentencing hearing, the trial court told Foster that it had reviewed both the court clinic report and the presentence-investigation report. The trial court then listened to the victim's cousin, grandmother, and aunt, and to Foster's parents. The trial court sentenced Foster to seven years in prison for the rape offense. The trial court did not inform Foster during the sentencing hearing

that the seven-year prison sentence was mandatory. The sentencing entry, likewise, did not state that Foster's seven-year sentence for the rape offense was mandatory.

### Failure to Notify Regarding Mandatory Prison Term

{¶12} In his first assignment of error, Foster argues his guilty plea was not knowingly, intelligently, and voluntarily made because he was not informed at the time that he pleaded guilty that the rape offense carried a mandatory prison sentence that rendered him ineligible for community control, judicial release, and earned days of credit.

{¶13} A guilty plea is constitutionally valid only if it is entered knowingly, voluntarily, and intelligently. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). To ensure a no-contest or guilty plea is made knowingly, intelligently, and voluntarily, the trial court must engage the defendant in a colloquy pursuant to Crim.R. 11(C) and inform him of certain constitutional and nonconstitutional rights. *Id.*

{¶14} The trial court must inform the defendant that by pleading guilty or no contest, he is waiving the following constitutional rights: the privilege against self-incrimination, the right to a jury trial, the right to confront his accusers, and the right of compulsory process of witnesses. Crim.R. 11(C)(2)(c). The trial court must also inform the defendant of certain nonconstitutional rights, including the nature of the charges, the maximum penalty involved, the eligibility of the defendant for probation or community control, and the effect of the plea. Crim.R. 11(C)(2)(a) and (b).

{¶15} A trial court must strictly comply with Crim.R. 11 when it explains the constitutional rights set forth in Crim.R. 11(C)(2)(c). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, syllabus; *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus. When a trial court fails to

explain these rights, the guilty or no-contest plea is invalid "under a presumption that it was entered involuntarily and unknowingly." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12.

{¶16} A trial court, however, need only substantially comply with Crim.R. 11 when explaining the nonconstitutional rights set forth in Crim.R. 11(C)(2)(a) and (b). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). When a trial court fails to substantially comply with Crim.R. 11 with regard to a non-constitutional right, the plea may be vacated only if the defendant shows prejudice. "The test [for prejudice] is whether the plea would have otherwise been made." *Id.*

{¶17} A defendant who is required to serve a mandatory prison term is ineligible for probation or community control. *See* R.C. 2929.16(A). Crim.R. 11(C)(2)(a) requires the trial court to inform a defendant about his eligibility for probation or community control. In *Nero*, the Ohio Supreme Court held that "where the circumstances indicate that the defendant knew he was ineligible for probation and was not prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a), the trial court's acceptance of the defendant's guilty plea to the nonprobationable crime of rape without personally advising the defendant that he was not eligible for probation constituted substantial compliance with Crim.R. 11. (*State v. Stewart*, [1977], 51 Ohio St.2d 86, 364 N.E.2d 1163 followed)." *Nero* at syllabus. In *Nero*, the defendant's attorney had told the trial court during the plea colloquy that he knew his client would be incarcerated and the defendant had asked the trial court to give him some time to straighten out his affairs. *Id.* at 108.

{¶18}  In *State v. Farley*, 1st Dist. Hamilton No. C-010478, 2002 WL 397909, *1, (Mar. 15, 2002), this court held that the trial court had erred by accepting the defendant's guilty plea to an amended rape charge and one count of gross sexual imposition where the trial court had failed to comply with Crim.R. 11(C)(2)(a).  The plea form the defendant had executed had not stated that the prison term for the rape offense was mandatory, or that the defendant was ineligible for probation or community control, and the trial court had failed to orally inform the defendant that he was ineligible for probation or community control.  *Id.* at *2

{¶19}  We acknowledged that to make a voluntary choice, a defendant must act with a full understanding of the consequences of his plea.  Because the prospect of probation or community control would be a factor weighing heavily in favor of a plea, we reasoned that the fact that a community-control sanction was statutorily precluded could affect the defendant's decision to enter a guilty plea.  *Id.*  We held that under the totality of the circumstances, we could not conclude that the defendant, at the time he had entered his guilty plea, had understood that he was ineligible for community control or probation, and we could not be confident that he would have entered his guilty plea had the trial court complied with the rule.  *Id.*

{¶20}  Here, Foster's written plea form had the word "none" written under the heading for mandatory prison term.  The plea form further provided that "if granted community control/probation at any point in my sentence, I understand that I will be subject to all conditions imposed by Community Control/Probation."

{¶21}  At Foster's plea hearing, the trial court incorrectly advised Foster that the rape offense did not carry a mandatory prison term.  But the trial court expressly told Foster that community control was not a sentencing option and that it was planning to impose a prison sentence upon him.  Despite these express statements,

the trial court proceeded to read from the community-control explanation in the plea form. The trial court then told Foster that it could not tell him the exact prison term it would impose, but that it would be more than the statutory minimum of three years. The trial court then gave Foster an opportunity to speak with his family about the guilty plea. Following the trial court's statements regarding its imposition of a prison term upon Foster, Foster decided to plead guilty to the offense.

{¶22} Although the trial court read from the community-control portion of the plea form, Foster can demonstrate no prejudice from the trial court's statements. Here, unlike in *Farley*, the trial court had expressly told Foster multiple times during the plea colloquy that community control was not a sentencing option and that it was planning to impose a prison term. Under the totality of the circumstances in this case, we cannot conclude that Foster's guilty plea was not knowingly, voluntarily, and intelligently made. *See Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474.

{¶23} The dissent, in arguing that the trial court failed to comply with Crim.R. 11, ignores this court's precedent and does not meaningfully explain why the Supreme Court's opinion in *Nero* mandates a different result. Instead, it relies on case law from other appellate districts that is factually distinguishable. In the cited cases from these districts, the plea form, like the form in *Farley*, contained no information about a mandatory term or contained wrong information and likewise, the trial court either gave wrong information about community control or no information about community control at all. Those districts, like this court in *Farley* concluded that under these circumstances, the defendant could not have appreciated the effect of his plea. Here, however, the trial court expressly told Foster that he would be going to prison. Thus, our conclusion is not inconsistent with the case law cited by the dissent.

**{¶24}** Foster additionally argues that his guilty plea was not knowingly, voluntarily, and intelligently entered because the trial court failed to advise him that he would be ineligible for judicial release and earned days of credit. A defendant who is serving a mandatory prison term cannot apply for judicial release until the expiration of all mandatory prison terms in his stated prison sentence. *State v. Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, 22 N.E.3d 1082, ¶ 11; R.C. 2929.13(F) and 2929.20(A)(1)(a) and (B). A defendant's ineligibility for judicial release, however, is not one of the items in Crim.R. 11(C)(2)(a) that the trial court is required to determine a defendant's understanding of when he or she enters a guilty plea. *State v. Simmons*, 1st Dist. Hamilton No. C-050817, 2006-Ohio-5760, ¶ 13, citing *State v. Xie*, 62 Ohio St.3d 521, 524-525, 584 N.E.2d 715 (1992). Thus, a trial court is generally not required to inform a defendant about judicial release during the plea colloquy unless judicial release is incorporated into a plea agreement or the defendant can demonstrate that the trial court made some misstatement or misrepresentation about judicial release that he relied upon when entering his plea. *State v. Kinney*, 1st Dist. Hamilton No. C-160415, 2018-Ohio-404, ¶ 22-26 (following *Simmons* and holding the defendant's reliance upon the trial court's erroneous statements about his eligibility for judicial release rendered his guilty plea involuntary).

**{¶25}** Here, the plea form provided: "I understand the maximum penalty as set out above and any mandatory prison term during which I am not eligible for judicial release * * *." The trial court never orally discussed judicial release during the Crim.R. 11 plea colloquy. It was not a part of Foster's plea agreement with the state, and Foster has not argued that his eligibility for judicial release was a factor in his decision to plead guilty.

{¶26} Likewise, Crim.R. 11 does not require a trial court to notify a defendant that his sentence may or may not be reduced by the statutory provisions providing for earned days of credit. Foster has cited no authority to the contrary. *See State v. Dowdy,* 8th Dist. Cuyahoga No. 105396, 2017-Ohio-8320, ¶ 12; *State v. Fisher*, 6th Dist. Lucas No. L-15-1262, 2016-Ohio-4750, ¶ 17. Foster's guilty-plea form stated the following with respect to such credit: "I understand that I may be eligible to earn days of credit under the circumstances set forth in R.C. 2967.193 of the Ohio Revised Code. I further understand that the days of credit are not automatically earned, but must be earned in the matter specified by law." This language in the plea form was not an incorrect statement of law. The trial court did not discuss earned days of credit during its plea colloquy with Foster. Foster does not argue that his eligibility for earned days of credit was a factor in his decision to plead guilty. Thus, we overrule the first assignment of error.

{¶27} In his second assignment of error, Foster argues that the Ohio Department of Rehabilitation and Correction violated the separation-of-powers doctrine by administratively adding the designation "mandatory" to his records without any judicial order requiring such action.

{¶28} Foster claims this error is demonstrated by a Department of Rehabilitation and Correction printout appended to his brief. But the printout was not made a part of the record in the trial court, and thus, it is not part of our record on appeal. *See* App.R. 9(A). Materials appended to briefs may not be considered pursuant to App.R. 9(A) and 12(A)(1)(b). *State v. Tekulve,* 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030 (1st Dist.) (holding that documents appended to the defendant's brief were not a part of the record on appeal). Foster, thus, cannot demonstrate the error of which he complains. *See State v. Ishmail*, 54 Ohio St.2d

402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. We, therefore, overrule his second assignment of error, and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** concurs.
**ZAYAS, J.,** concurs in part and dissents in part.

**ZAYAS, J.,** concurring in part and dissenting in part.

{¶29} I concur with the majority's resolution of Foster's second assignment of error. However, under the totality of the circumstances, I conclude that Foster could not have understood the maximum penalty he was facing because he was erroneously informed that the prison sentence was not mandatory and erroneously informed that he was eligible for community control. Although the trial court informed him that it would not impose community control because of the nature of the offense, the court did not advise him that he was facing a mandatory sentence, rendering him ineligible for community control.

{¶30} Unlike the majority, I am not persuaded that *Nero* governs the outcome of this case. *Nero* is distinguishable from this case because it involved the clause related to probation eligibility, and not the clause that requires that a defendant understand the maximum penalty. Nero was correctly advised of the maximum penalty he was facing. Here, Foster was incorrectly advised that he would not be serving a mandatory prison term, and that he was eligible for community control, judicial release, and to earn days of credit. Under these circumstances, Foster could not have understood the maximum penalty he was facing. Therefore, I respectfully dissent from that portion of the majority's opinion.

### The Plea Form

{¶31} The record indicates that Foster signed a written plea form before the Crim.R. 11 colloquy. While the written plea form correctly indicated that the

11

potential sentencing range was three to 11 years, it erroneously stated that none of the time was mandatory.  The form also stated, "I understand the maximum penalty as set out above, and any mandatory prison term during which I am NOT eligible for judicial release."  The form explained that if he were granted community control at any point in his sentence, he would be subject to conditions, and the possible penalties for violating those conditions.  Finally, the form informed him that he may be eligible to earn days of credit and "that the days of credit are not automatically earned, but must be earned in the manner specified by Law."

### The Plea Colloquy

{¶32}  Before accepting Foster's guilty plea, the trial court engaged him in the following colloquy.

THE COURT: And a Felony 1 has a potential sentencing range, doesn't it?  It carries a minimum period of incarceration and a maximum period of incarceration.  What's the minimum?

THE DEFENDANT: Three.

THE COURT: What's the maximum?

THE DEFENDANT: Eleven.

THE COURT: Very good.  And no mandatory prison term, but it does have a maximum fine of $20,000.

* * *

THE COURT: You understand that this is not a probation offense, that I'm not considering probation on this case.  Do we understand each other?

THE DEFENDANT: Yes.

12

THE COURT: And I'm thinking about a penitentiary sentence of anywhere from three to eleven years. Do you understand that?

THE DEFENDANT: Yes.

\* \* \*

THE COURT: And also, I will read the community control. At any point in this sentence, I can give you community control. If you violate any of those conditions, I can give you a longer period of community control probation. I can increase the restrictions on the community control probation. Or sentence you anywhere from three to eleven years and community control may last up to five years. I want to say this because I don't want you to walk out of this room thinking or having any miscalculations or being misguided. I'm not thinking about probation. And because of the nature of the charge, more than likely, I would not be thinking of post-release control either. Once I lay down the number, that's going to be it.

THE DEFENDANT: What is she saying?

THE COURT: I'll repeat that. I'm not considering probation at this particular time for you because of the nature of the crime. I'm also telling you at this particular point in time, once I pass sentence, I more than likely would not be thinking of a post-release control type of plea. I don't want you to think of any promise or any thoughts of post-release control, do we understand each other, sir?

THE DEFENDANT: Yes. Yes, ma'am.

\* \* \*

13

THE COURT: But I'm not thinking about probation. I know when you walked up to the podium from a discussion perhaps with your attorney, you were hopeful of that. I'm not going to promise you minimum. You probably were hopeful for that.

### Law and Analysis

{¶33} To determine whether a plea was entered knowingly, intelligently and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Tutt*, 2015-Ohio-5145, 54 N.E.3d 619, ¶ 13 (8th Dist.). A trial court must substantially comply with Crim.R. 11(C)(2)(a) with respect to the nonconstitutional rights and ensure the defendant understands the maximum penalty involved and his ineligibility for community control. *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* at 108.

{¶34} In conducting the plea colloquy, the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his decision and enter a valid plea. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 26; *State v. Rand*, 10th Dist. Franklin No. 03AP745, 2004-Ohio-5838, ¶ 23 (the trial court committed reversible error when it accepted defendant's guilty plea because it misinformed him that his sentence was not mandatory); *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 15-16 (trial court's failure to advise defendant that a guilty plea to a robbery charge carried a mandatory prison term that rendered him ineligible for community control or judicial release invalidated the plea and required reversal of the conviction and sentence); *State v. Smith*, 5th Dist. Licking No. 13-CA-44, 2014-Ohio-2990, ¶ 11-12

14

(trial court's failure to notify defendant who pled no contest to rape charges of the amount of mandatory prison time and the time during which he would be ineligible for community control resulted in invalid plea that required reversal).

{¶35} Where a defendant faces a mandatory prison sentence as a result of a plea, the trial court must determine, prior to accepting the plea, that the defendant understands that he or she is subject to a mandatory prison sentence and that as a result of the mandatory prison sentence, he or she is not eligible for probation or community-control sanctions. *See, e.g., Tutt* at ¶ 19; *State v. Silvers*, 181 Ohio App.3d 26, 2009-Ohio-687, 907 N.E.2d 805, ¶ 13 (2d Dist.); *State v. Hendrix*, 12th Dist. Butler No. CA2012-12-265, 2013-Ohio-4978, ¶ 6; *State v. Brigner*, 4th Dist. Athens No. 14CA19, 2015-Ohio-2526, ¶ 14. "The rationale for such a rule is that, without an adequate understanding of mandatory prison time, a defendant cannot fully understand the consequence of his or her plea as required by Crim.R. 11(C)(2)." *Tutt* at ¶ 23.

{¶36} In this case, the trial court affirmatively told Foster that a prison term was not mandatory, and that he was eligible for community control at any point in the sentence. Significantly, the judgment entry does not state that the prison term was mandatory. The plea form also contains multiple incorrect and misleading representations. The form incorrectly informed Foster that none of his sentence would be mandatory, and that he was eligible for the imposition of community control, judicial release, and may be eligible to earn days of credit. However, Foster was not eligible for community control, judicial release, or to earn days of credit because he was subject to a mandatory prison term. *See Silvers* at ¶ 12. Ordinarily, a trial court is not obligated to inform a defendant about judicial release or earned days of credit. *Id.* at ¶ 14. However, when the plea form contains incorrect and

misleading information about judicial release or earned days of credit, a trial court must correct the misinformation. *Id.* at ¶ 15; *Hendrix* at ¶ 26.

{¶37} At no point, either through the plea form or during the plea colloquy, was Foster advised that the rape charge carried a mandatory prison term rendering him ineligible for community control, judicial release, and earned days of credit. In fact, he was expressly advised that a prison term was not mandatory. Foster could not have understood that he was required to serve a mandatory sentence, which meant he would serve the entire prison term, and was ineligible for judicial release and to earn days of credit. *See Hendrix* at ¶ 26 (vacating a defendant's plea where the colloquy and plea form misadvised the defendant and understated the sentence with regard to earned credit, community control, and judicial release); *Silvers* at ¶ 15 (trial court failed to substantially comply with Crim.R. 11(C)(2)(a) when it did not correct the information in the plea form and affirmatively notify the defendant that he was ineligible for judicial release).

{¶38} Although the trial court informed Foster that the court intended to impose a prison term rather than community control, the court also informed him that he was eligible for community control. Notably, at the plea hearing, the court acknowledged that Foster was still hopeful for a sentence of community control when he walked up to the podium. At no time did the court explain that he was ineligible for community control because he was facing a mandatory prison term. "Ineligibility for (as opposed to the unlikelihood of) the imposition of community control sanctions is deemed to be a sufficiently important effect of a plea of guilty or no contest that it is specifically incorporated in Crim.R. 11(C)(2)(a) as a subject that must be specifically addressed by the trial court, concerning which the defendant's understanding must be specifically determined by the trial court." *State v. Balidbid,*

2d Dist. Montgomery No. 24511, 2012-Ohio-1406, ¶ 12. Consequently, Foster could not have subjectively understood that he was subject to a mandatory prison term on the rape charge and ineligible for community control.

{¶39} Under the totality of the circumstances, the trial court failed to substantially comply with Crim.R. 11(2)(a). *See Tutt*, 2015-Ohio-5145, 54 N.E.3d 619, at ¶ 22 (trial court did not substantially comply with Crim.R. 11(C)(2)(a) when it failed to expressly inform the defendant that the defendant was subject to a mandatory prison term and was not eligible for community control); *State v. Norman*, 8th Dist. Cuyahoga No. 91302, 2009-Ohio-4044, ¶ 12 ("compliance with the 'maximum' penalty provision of Crim.R. 11(C)(2) requires the court to inform the defendant, prior to taking a guilty plea, that a charge carries a mandatory consecutive sentence"); *Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, at ¶ 15-17 (trial court's failure to advise defendant that guilty plea to robbery charge carried a mandatory prison term rendered plea invalid); *State v. Smith*, 5th Dist. Licking No. 13-CA-44, 2014-Ohio-2990, ¶ 11-12 (defendant's no-contest pleas to four counts of rape were not knowing, intelligent and voluntary where although the trial court informed defendant at the plea hearing that the offenses "carr[ied] a term of mandatory incarceration," it failed to state the number of years that were mandatory); *Rand*, 10th Dist. Franklin No. 03AP-745, 2004-Ohio-5838, at ¶ 21-23 (where the entry of guilty plea indicated that prison sentence was not mandatory and the trial court failed to advise the defendant at plea hearing that the prison sentence was, in fact, mandatory, the trial court did not substantially comply with Crim.R. 11(C)(2)(a)).

{¶40} Having found the trial court did not substantially comply, the next step is to determine whether the court partially complied or wholly failed to comply.

*Hendrix,* 12th Dist. Butler No. CA2012-12-265, 2013-Ohio-4978, at ¶ 11. If the court partially complied, the plea will not be vacated unless the defendant establishes prejudice. *Id.* If the court wholly failed to comply, the defendant need not demonstrate prejudice, and the plea must be vacated. *Id.*

{¶41} Because the trial court failed to inform Foster that the prison term was mandatory, the court wholly failed to comply with Crim.R. 11(C)(2)(a), and he need not demonstrate prejudice. *See Tutt* at ¶ 31; *Givens* at ¶ 15; *State v. Dunham*, 5th Dist. Richland No. 2011-CA-121, 2012-Ohio-2957, ¶ 16-17. Accordingly, I would sustain Foster's first assignment of error, reverse the conviction, vacate the plea, and remand the cause for further proceedings.

Please note:

The court has recorded its own entry this date.